Our next case up today is 411-0468, intermarriage of Bentley, shall appearance of the appellate Mr. Beeley or the employee Mr. Quitschau, is that pronounced correctly? Yes sir. Okay, Mr. Beeley you may proceed sir. May it please the court and counsel my name is Jack Beeley and I have the honor and privilege of representing the plaintiff petitioner Jacqueline Bentley in the instant divorce case. As you can see from the record this is a divorce case, plain and simple as far as the matter being a divorce case there are no other issues here other than pure divorce. Briefly let me touch on the history of this case and Mr. Quitschau can probably tell you more about it because he was the attorney of record for my client now Mrs. Bentley in the beginning back in 2009. At that time the petitioner Jacqueline Bentley hired Mr. Quitschau to represent her in the instant divorce case and I think it's fair to say this is a high stakes divorce case that involves over a million dollars in assets some of which I think both sides alleged were hidden. So it's fair to say that it was probably a bitter and contested divorce case. Ralph Bentley was under a guardianship with the Heartland Bank for his assets and Mr. Quitschau can tell you more about that. To make a long story short here though the matter was tried, contested and on October 1 of 2010 Judge Soup entered a final order that pretty much divvied up the property and money and here again the Heartland Bank was the one holding the purse strings in this case of the funds. Both sides filed post trial motions which were denied and around Christmas Eve 12-23 of 10 my client Jacqueline Bentley came to me and hired me. She was dissatisfied with Mr. Quitschau and on that same date December 23 she went over and talked to his receptionist and hired him through the receptionist and as counsel indicated in his brief I didn't put it in mine but she called him quote a pissed poor attorney end quote. So that ended the attorney-client relationship in addition when she retained me on December 23 of 10 I wrote Mr. Quitschau a letter which we've attached to the brief in this case and which I state in pertinent part please be advised that your former client Jacqueline Bentley has retained me to file an appeal in the above case. She has requested that you turn over your files to me so that I may review the same end quote. That letter was received by Mr. Quitschau and he has acknowledged receipt of the same. Everything was completed as far as the divorce? Of course but the property was still being held by the bank. In other words Helen Ogar's client and Helen Ogar, Ralph Bentley and the bank would not release the funds and I think that's why Mrs. Bentley was upset. One of the reasons she was upset and hired me was because she got everything on paper, a lot of things on paper but didn't see any cash. So going back to my chronology here I entered my appearance on December 28 of 10 in the underlying case and then the key date here I think is January 5 of 11 Mr. Quitschau files his written motion to withdraw in the case. Then on December 10 and 11 he files his purported attorney's lien but he sends it to Helen Ogar, to me and to Jacqueline Bentley by regular mail not by certified mail, not by registered mail. So we have in my opinion a major flaw here as far as the service. On 1-11-11 he did file his attorney's lien with the clerk of the circuit court and it reposes in the official file. Then I believe on or about March 2 of 11 Mr. Quitschau faxed his attorney's lien to the Heartland Bank. The Heartland Bank, here again holding all this money, never received a certified copy or a registered mail letter from Mr. Quitschau of his purported attorney's lien. In the meantime I had filed a petition to adjudicate the attorney's lien I lost in the circuit court, Judge Suk ruled against me. And then on March 24 of 11 Judge Suk entered the formal withdrawal order submitted by Mr. Quitschau to withdraw from the case. So that briefly is a thumbnail sketch of the facts of the case and I think those facts are important because with attorney's liens as we all know they're time driven. Time is everything and you have to do it right because the attorney's lien is in derogation of the common law so the statute is strictly construed. I believe with all respect that the case can be settled quickly here on the issue of the legality of the whole matter because my research has revealed that in divorce cases in Illinois there are no attorney's liens. The attorney's lien statute from what I can gather, and we use it almost every day, is on personal injury cases. In other words when a client comes into my office and hires me on a rear ender we just automatically send an attorney's lien letter out to the insurance company by certified mail. And that's where we use it every day in our practice. I've never seen it done before in a divorce case other than this particular case here I guess. But the cases we've cited in the brief, and there's at least three if perhaps not more, are really adamant about this. They say there are no liens in divorce cases, pure and simple. So I think that being the law, unless you folks care to reverse it, the case is over. But let's assume that I'm wrong, or you're going to reverse the law on that area, then I think... Have there been any developments in marital law since 1950? Well, as Mr. Kutchaw points out in his brief, the statute has changed. Does that have anything to do with any of the issues? It's just a red herring. He just tosses something up for straws. He's grasping for straws here. Once again, the statutes and derogation of the common law are strictly construed if it were the intention of the legislature to allow attorney's liens in divorce cases, then certainly that language would have to be in the statute specifically, either in whatever it is, 5508, or in the Attorney's Lien Act itself. It says this also applies to divorce actions, but that language is never there. It doesn't exist. So I believe the case turns right on the first point of the brief. There are no liens in divorce cases. Now I realize... What does the Attorney's Lien Act say on the subject? I think it's devoid on divorces. You say... I don't think it mentions the word divorce. We cited... What does the Attorney's Lien Act say about the nature of the actions in which it may be used? It says causes of action for damages, and divorce wouldn't be for damages. So here again, I think the language has to be very, very precise because it's in derogation of the common law. But let's assume for the sake of argument that you can have them. Here again, he's got more hurdles to jump. One of the big hurdles here is that the lien has to be served by registered mail or certified mail. And that didn't happen here. He admits, to his good credit, that he sent it out, regular mail, to the three of us. He didn't even bother to send it to the main player here, the Heartland Bank, with all this money. That didn't happen. He faxed it to the bank in March of 11. So that's the kiss of death, I think, even if you assume you can have an attorney's lien in a divorce case. You have to still comply with the lien statute, which says registered or certified mail. And the other problem he has is you have to file the lien in a timely manner. Now, in this case, my client, Jacqueline Bentley, fired him on Christmas Eve of 2010, and he filed... The first sentence of the Attorney Lien Act says, Attorneys at law shall have a lien upon all claims, demands, and causes of action. What part of that excludes marital cases? Well, if it doesn't say marital cases, then it doesn't apply. In other words, causes of action... Is this a claim? L. L cases. L cases. Upon all claims, demands, and causes of actions. That suggests L to me. Cause of action, I don't think, would be divorce. It's chancery equity. So that's your argument on how this notice... It's not my argument. It's what the appellate courts before us have done. No appellate court has said, or no Supreme Court has said, that you can have a lien in a divorce case. In fact, Judge Suk stood up on the bench when we were going over this and says, You know, he said, I've talked to my colleagues, and I don't know if you're supposed to do that, but I guess you can. I've talked to my colleagues on the bench, and he says, we all agree there are no liens in divorce cases. And I go, well, you know, wonderful. Well, why should that be? If, as here, there's an order to pay thousands of dollars... I agree with you. I don't think it should be. I think the statute... Well, you're arguing that it makes no sense, and I just don't understand why. I'm the lawyer. I'm talking out of both sides of my mouth here. But the point is, I wish it would apply, because I've been in this situation. I've been in Mr. Bushaw's shoes, where clients have not wanted to pay me. And unfortunately, if it's a divorce case, your remedy, of course, is in the statute, you can go in, I think, after 90 days after the case is over, and file a fee petition, or he can take it up, L.M. court, and file this for breach of contract. So it's not without a remedy. What happens here is, he just didn't do the right procedure here to perfect a lien that can never be perfected in a divorce case. So, that's the problem in a nutshell. In other words, there's four things that are bad here, just to summarize my argument, and then I'll sit down if you don't mind. And that is, one, there are no liens in divorce cases. Two, if you're going to file an attorney's lien, you must file it before you withdraw. And this court has decided that issue before. Aren't attorney's liens typically filed in cases before you withdraw? Isn't that the normal procedure? When was the withdrawal in this case? Well, that's a good question. What did Judge Suk say was the withdrawal? Judge Suk said the withdrawal was in March of 2011. Why wasn't he right about that? Well, you know, he might be right technically, but when the client goes in... What does right technically mean? I think it's just a formality. He just signed off the order. Well, it was in the file for probably three months, nobody got around it. Until a lawyer's motion to withdraw has been granted, isn't he still the lawyer in the case? Technically, he may be the lawyer of record, but when she goes in, when Mrs. Bentley goes in and says you're fired and uses that P word, I think that's pretty much the end of the game for the lawyer. So then the attorney lien filed after that, but before March is of no effect? That's our position. Do you have any case law that says that? Well, all the cases say, you know, and you guys have said it before... Technically stuff, I mean, you know... Technically stuff. Cases turn on technically stuff. Well, you see, that's the point. Why was Judge Suk wrong in saying that he continued to be lawyer until March of 2011? Well, here's the point. If she fires him on Christmas Eve and I write a letter the same day saying you're fired... Is that the only thing that happens to fire someone? Don't you have to have some action in court when counsel has entered an appearance and taken action? I really believe once the client fires the lawyer, it's over. So the client doesn't have to file anything? No one has to take any action? Sure, under the Supreme Court rules, you have to file a motion and get approval of the court to withdraw. So that was just if convenient, or the court wasn't serious about it? I think the order was in the file weeks before he entered it. But I don't think it makes any difference. I think the key here, and the case turns on the fact that she fired him. But it doesn't have to turn on that, because like I say, even if, let's assume that he's still the attorney of record until March, he didn't serve the bank with first strings properly. He faxed the notice to the bank. And the bank is here complaining about it? They complained to me about it. I don't see the bank here. They're not here today. Now isn't that interesting? Because it's the bank's interest that would be affected, right? That's correct. Whereas you knew, you had copies. No question we knew. So even assuming this is a technical violation of the statute, how does it affect your client's rights? Well, it affects my client because she is retired. She has cancer. And she's short $15,000 in her pocket. So this bad notice to the bank, how did it affect your client's rights? The bank wouldn't pay us the money. They withheld $15,000 out of the settlement. And had a better notice been sent to the bank, what would that have meant for your client? Had a better notice been sent to the bank, I don't think it would have made a bit of difference because there aren't any liens in divorce cases. So it's like the dog chasing its tail. We go round and round and round. But as we sit here, just to answer your question, as we sit here today, my client is short $15,000 because Mr. Quitshaw has tied up that money. And that's why we're here today. So in conclusion, and I thank you very much for hearing my arguments. It's a very interesting case. And I wish the law were different because I'm a practicing attorney in the divorce court. But I fear that it is not. Thank you so much. Thank you, counsel. Mr. Quitshaw. May it please the court. Counsel. The first issue which the appellant raises is whether or not attorneys' liens apply in divorce actions. As the court has already pointed out, the attorney lien statute itself does not say, one way or another, whether it applies to divorce cases. The law on that issue developed in the cases that Mr. Vealey cited back prior to 1970 where the courts found that the Attorney's Lien Act did not apply because the issue between an attorney and his client regarding fees is not a subject matter that the divorce court would or should address. All of those cases which Mr. Vealey presents to the court are prior to the enactment of Section 508. In addition, all of those cases are cases from a district other than the Fourth District. So Mr. Vealey's statement that the court would be overturning the law I do not believe is accurate as there's not actually a Fourth District case that I could find. What does that mean? When you say it's not a Fourth District case, does that mean we should just disregard it? No, it does not mean that you should disregard it. I believe it's definitely persuasive authority that the court should consider, but I do not think that the court would actually be overturning case law to hold otherwise. Okay. The enactment of Section 508 essentially allowed attorneys to address fee issues as part of the divorce case. And once that statute was enacted, the rationale from the prior holdings pertaining to it no longer being relevant was removed. So in other words, all the reasoning from these prior court cases that say we're not going to allow attorney liens in divorce cases, that no longer applied because now, by statute, the courts were going to address issues between attorneys and clients in these divorce cases. So I disagree with Mr. Vealey's statement that it does not apply. I also disagree with his statement that Judge Suk stated that it does not apply. In fact, my recollection was he inquired of me whether or not attorneys' liens could apply in divorce cases. I told him that I'd seen them done in divorce cases before and that although I did not actually find a case stating that they could be done in divorce cases, that the secondary authority on the matter as far as works published in scholarly articles seemed to believe that they did now apply in divorce cases. The second issue is the service and whether or not the service was satisfactory. Essentially what the statute states is that the service must be had upon the party against whom the client has the claim or cause of action. So in this case, that would be Ralph Bentley because Ralph Bentley had been ordered to pay my client, Jacqueline Bentley, $200,000 by way of an equalization payment. So he was, as the case is referred to, as he was the judgment debtor. And the notice requirements as the case is all state, the notice requirement is for protection of the judgment debtor so that the judgment debtor knows that this lien is being asserted. Now, Mr. Vealey is correct in that I did not have Ralph Bentley personally serve at his home with a copy of the lien. And the reason for that was because Mr. Bentley was in his mid-90s, he had been adjudicated a disabled person as a result of dementia. I reviewed the statute in the case law. I didn't think it was necessary to send a sheriff or a private process server to Mr. Bentley's home if he hadn't personally served with a copy of the lien. In lieu of that, the service which I effectuated essentially was certified mail to the guardian of his person, which was his son, and who also was living with him. So essentially, his son, Mark Bentley, who had been appointed the guardian of his person, he received the notice by certified mail and they were also residing together at that point in time. I also did other multiple methods of service upon his attorney, Helen Ogar, the holder of the funds, Parkland Bank, and there was no complaint regarding anybody as to the method of service. Everyone was aware. And essentially what the case law says is the service requirement is not to provide some type of technical defense by which a client may defeat a claim. It is to protect someone not actually having knowledge. And if everyone actually had knowledge, then the service requirements are satisfied. The third and final issue which Mr. Vealey raises is that the service was not proper because it happened after the cessation of the attorney-client relationship. And again, I disagree with Mr. Vealey in that, to my knowledge, Ms. Bentley never discharged me. She never had a conversation with me by which she told me I was being discharged and I never received anything in writing from her stating that she was discharging me. In fact, I had had conversations with her after she purportedly told my secretary or my receptionist that she was unhappy after I had received a letter from Mr. Vealey pertaining to the appeal representation and she never told me that I was no longer wanted as her representation. The divorce case itself was not concluded because payment of the $200,000 had not yet happened. All the personal property had not yet been exchanged. I finally did file a motion to withdraw due to the fact that I had not been paid. I did not put in my motion that I had been terminated or fired because, to my knowledge, I did not think that I had been. That motion was ultimately granted by Judge Sue based upon the fact that I had not been paid and all of the notices to everyone happened prior to Judge Sue entering that order allowing my withdrawal as Ms. Bentley's attorney. So, as to the third issue, again, the attorney-client representation did not end until after the notice was perfected. Anything further, counsel? Okay, thank you very much. Mr. Vealey, any rebuttal, sir? Your Honor, I believe we've argued it well. Okay, thank you, counsel. Court will take this matter under advisement and be in recess for a few moments.